# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DOROTHY DUGAN, :

                     Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                     Defendant. :

Case No. 3:07-cv-159

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury.  *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

2

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on January 30, 2001, alleging disability from February 25, 1999, due to a vertebrogenic disorder, carpal tunnel syndrome, depression, and short-term memory loss. *See* Tr. 48. Plaintiff's applications were denied initially and on reconsideration. *Id.* A hearing was held before Administrative Law Judge James Knapp who determined in a decision dated May 10, 2002, that Plaintiff was not disabled. (Tr. 48-63). The Appeals Council denied Plaintiff's request for review and Plaintiff took no further appeal.

Plaintiff again filed applications for SSD and SSI on September 20, 2002, alleging disability from February 25, 1999, due to chronic back problems, severe depression, memory loss, and bad nerves. (Tr. 104; 739; 131). Plaintiff's applications were denied initially and on reconsideration. (Tr. 69, 74; 744, 752). A hearing was held before Administrative Law Judge Daniel Shell, (Tr. 780-807), who determined that Plaintiff is not disabled, (Tr. 16-35). The Appeals Council denied Plaintiff's request for review, (Tr. 7-10), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that Plaintiff met the insured status requirements of the Act through June 30, 2004. (Tr. 33, finding 1). Judge Shell also found that Plaintiff has severe degenerative disc disease of the cervical and lumbar spines, left carpal tunnel syndrome, osteoarthritis of the left knee, fibromyalgia, and a depressive disorder, but that she does not have an impairment or combination of impairments that meets or equals the Listings. *Id.,* finding 3. Judge Shell found further that Plaintiff has the residual functional capacity to perform a limited range of sedentary work. *Id.,* finding 5; Tr. 34, finding 7. Judge Shell then used section

4

201.25 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. *Id.,* findings11, 12. Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 34).

The parties agree that May 11, 2002, is the effective date of Plaintiff's current applications. (Doc. 7 at 1; Doc. 10 at 6). Prior to that date, specifically in January, 2000, Plaintiff underwent an anterior cervical discectomy with an interbody fusion at C5-6. (Tr. 553-54).

An MRI of Plaintiff's cervical spine which was performed on May 8, 2001, revealed a right paracentral disc protrusion at C4-5 effacing the anterior thecal sac with possible flattening of the cord. (Tr. 478). There were also postoperative changes at C5-6 as well as a tiny central disc protrusion at C6-7. *Id.* A lumbar MRI performed on that same date indicated degenerative changes. (Tr. 479).

The record contains a copy of Plaintiff's treatment notes from the Miami Valley Hospital Family Health facility dated January 16, 2001, through December 2, 2003. (Tr. 435-97). Those notes reveal that Plaintiff received general medical care at that facility and particularly for complaints of back and neck pain. *Id.*

Consulting physician Dr. Reynolds reported on February 4, 2003, that spontaneous movements of Plaintiff's neck and back were limited. (Tr. 316).

The record contains a copy of Plaintiff's treatment notes from Dr. White of the Mercer County Family Care practice dated December 10, 2002, through February 18, 2003. (Tr. 359-408). Dr. White reported on December 26, 2002, that Plaintiff's diagnoses were depression, anxiety, chronic pain secondary to cervical radiculopathy, and degenerative joint disease, that she

5

was able to stand/walk and sit each for 4 hours in an 8-hour day and for 30 minutes without interruption, and that she was able to occasionally lift up to 10 pounds. *Id.* On March 3, 2003, Dr. White reported that Plaintiff's diagnoses were rheumatoid arthritis, cervical disc disease, and status post cervical spine surgery, that she had no sensory deficits, had swelling of the left elbow and decreased flexion of her left knee, and that back pain limited her movements. *Id.*

On March 27, 2003, consulting physician Dr. Wray reported that Plaintiff exhibited pain behaviors throughout the interview and examination, that her neurological exam was normal, and that her cervical range of motion was slightly limited and painful. (Tr. 318-19).

In February, 2004, Dr. Adams of the Miami Valley Hospital Family Health Center reported that Plaintiff's diagnoses were chronic back pain with neuropathic pain, depression, migraine headaches, carpal tunnel syndrome, GERD, and tobacco abuse. (Tr. 525-26). Dr. Adams also reported that Plaintiff's status was stable with treatment, that she was able to stand/walk and sit each for 1 hour in an 8-hour workday and for 1 hour without interruption, that she was able to lift/carry up to 5 pounds occasionally, and that she was unemployable for 9 to 11 months and for 12 months or more. *Id.*

Plaintiff was evaluated by pain specialist Dr. Smith on March 11, 2204, at which time he reported that Plaintiff had diffuse pain of the cervical and thoracic spine which was aggravated with even light touch, diffuse pain of the lower extremities with all types of movement, and that her neurological exam was negative. (Tr. 531-34). Dr. Smith identified Plaintiff's diagnoses as diffuse pain syndrome, status post cervical fusion with radicular symptoms, lumbar disk bulge, and fibromyalgia. *Id.*

A March 10, 2004, MRI of Plaintiff's cervical spine revealed findings similar to those

reported in May, 2001. (Tr. 527).

The record contains a copy of additional treatment notes from the Miami Valley Hospital Family Health Center dated July 19 through November 23, 2004. (Tr. 705-26). During that period of time, it was noted that Plaintiff exhibited 14 of 18 fibromyalgia trigger points and that her neurological examinations were normal. *Id.*

A December 1, 2004, EMG revealed findings consistent with carpal tunnel syndrome and no evidence of cervical radiculopathy or other neuropathy. (Tr. 727).

Dr. Adam reported on February 1, 2005, that Plaintiff was able to lift/carry 5 to 10 pounds occasionally and 10 pounds frequently, stand/walk for less than 6 hours in an 8-hour workday and for less than 6 hours without interruption, and that she was able to sit for less than 4 to 6 hours in an 8-hour workday and for less than 4 hours without interruption. (Tr. 728-32). Dr. Adam also reported that Plaintiff was not able to perform either light or sedentary work and that as a result of her impairments she would be absent from work more than 3 times a month. *Id.*

In addition to her alleged exertional impairments, Plaintiff alleges that she has depression and anxiety. Plaintiff's mental health treatment dates back to 2002, when she was hospitalized for treatment of depression after it was reported she had attempted to commit suicide by taking an overdose of Neurontin. (Tr. 259-80). However, Plaintiff denied being suicidal and alleged that she was "just stressed". *Id.*

Over time, Plaintiff has received out-patient mental health treatment for depression at various facilities including Foundation Behavioral Health, South Community Mental Health Services, and Eastway. (Tr. 409-34; 498-524; 535-45; 580-638; 665-81).

Dr. Longo of South Community reported on October 29, 2002, that Plaintiff's mood

was depressed with a somber affect, she became anxious easily, she was unfocused and easily distracted, and that her diagnosis was major depressive disorder. (Tr. 516-18). Dr. Longo also reported that Plaintiff was very avoidant, eschewed change, had a poor ability to focus, and would fail in a work setting due to her physical pain and psychiatric conditions. *Id.*

Examining psychologist Dr. Shamberg reported on May 13, 2003, that Plaintiff appeared depressed, to be in pain, and of sub-average intelligence, that she was receiving mental health treatment, was oriented, complained of short term memory problems, and that her diagnoses were major depressive disorder, recurrent, currently severe without psychotic feature,s and nicotine dependence. (Tr. 330-34). Dr. Shamberg assigned Plaintiff a GAF of 31 and opined that she was not able to do any sort of work at the present time and could manage her own funds. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred by failing to address her inability to look down for sustained periods and by failing to elicit any testimony from the VE about the conflict between the jobs he identified and the Dictionary of Occupational Titles (DOT). (Doc 7).

Plaintiff alleges in her Statement of Errors that her most disabling symptom is the limitation of neck movement, especially flexion, that results from her neck impairment. *Id.* at 10. Indeed, at the hearing, Plaintiff testified that she had a restricted range of motion in her neck that made it difficult for her to rotate her head. (Tr. 790). In addition, Plaintiff testified that she was "very restricted on looking down" and that she could not even go halfway down to where she could touch her chin to her chest. (Tr. 791).

Failure to consider the record as a whole undermines the Commissioner's conclusion. *Hurst v. Secretary of Health and Human Services,* 753 F.2d 517, 518 (6th Cir. 1985), *citing, Allen*

8

*v. Califano,* 613 F.2d 139, 145 (6th Cir. 1973).

Although Judge Shell found that Plaintiff is limited with respect to her ability to look up, he did not address Plaintiff's ability to rotate or look down. *See* Tr. 29. In this case, however, an inability to look down so as to do something like assembly work is vocationally relevant and important. Specifically, when asked to assume the limitations which Judge Shell determined Plaintiff had, *see,* Tr. 33, finding 5, with the addition of an inability to look down to perform an activity like putting small parts together, the VE identified that there are no sedentary jobs in the economy that such an individual could perform. (Tr. 800-05).

In the absence of an analysis of Plaintiff's ability to rotate her neck, and particularly to look down, this Court cannot engage in meaningful judicial review. Therefore, the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole and should be reversed.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that not all of the factual issues have been resolved and that the record does not adequately establish Plaintiff's entitlement to benefits. Specifically, as noted above, Plaintiff's ability to look down is vocationally important. The Court, of course, is not permitted to engage in fact-finding to determine whether the record supports Plaintiff's allegation with respect to her ability to look down due to her neck impairment.

The fourth sentence of 42 U.S.C. Sec. 405(g) directs the entry of a final appealable judgment even though that judgment may be accompanied by a remand order. *Sullivan v. Finkelstein,* 496 U.S. 617 (1990). The fourth sentence does not require the district court to choose between entering final judgment and remanding; to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for rehearing." *Id.*

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be reversed. It is also recommended that this matter be remanded to the Commissioner for additional administrative proceedings necessary to determine whether Plaintiff is disabled.

February 28, 2008.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).